UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TIMOTHY WILLIAMS,

        Plaintiff,

v.

LOGAN BLOUGH et al.,

        Defendants.
_____/

Case No. 1:25-cv-240

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

**Discussion**

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility in Coldwater, Branch County, Michigan.[1] The events about which he complains occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. Plaintiff sues the following MTU officials: Correctional Officer Logan Blough and Lieutenant Unknown Lien. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he states that on August 12, 2024, he participated in a mediation conference for "case no. 1:23-cv-1038," which he previously filed in this Court.[2] (*Id.*, PageID.3.) Plaintiff states that the case did not settle in the mediation conference. (*See id.*) Plaintiff further states that Defendant Blough is a party in the previously filed case, and that Defendant Blough "was officially served on 8-23-2024." (*Id.*, PageID.4.)

Subsequently, on September 1, 2024, at 10:40 p.m., Plaintiff "was showing another prisoner how [Plaintiff] file[s] grievances," and when Defendant Blough was conducting rounds in the unit, he saw Plaintiff and the other prisoner with the grievance. (*Id.*, PageID.3.) Plaintiff alleges that Defendant Blough "became upset at the sight of [Plaintiff] with the grievance because [Plaintiff] already ha[d] a pending lawsuit, case no. 1:23-cv-1038, [and] grievances filed on [Blough]." (*Id.*) As Defendant Blough walked by Plaintiff, Blough stated: "You still want to write people up; you should've settled!" (*Id.*) Plaintiff claims that "immediately after [Defendant] Blough left the dayroom, [Blough] reached out to [Defendant] Lien," and "10 minutes later,

---

[1] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=373703 (last visited June 5, 2025).

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

2

[Defendant] Lien told [Plaintiff] to pack [his] property because [Lien was] transferring [Plaintiff] to another unit for [Plaintiff's] safety or [Lien]'s placing [Plaintiff] in administrative segregation and writing [Plaintiff] a class [I] misconduct." (*Id.*)

Plaintiff asked why Defendant Lien was "transferring [Plaintiff] in the middle of the night," and in response Defendant Lien stated: "[Defendant] Blough was just served with your lawsuit and he wants you out of his unit!" (*Id.*) Plaintiff claims that Defendant Lien's "actions cause[d] [Plaintiff] to lose the high paying porter[] job that [Plaintiff] held in Baker Unit for over a year." (*Id.*) Plaintiff also claims that as a result of losing this job, he is "not able to pay filing fees for case no. 1:23-cv-1038 or pay for copies." (*Id.*, PageID.4.)

Further, Plaintiff alleges that he is "the only one that ha[s] a lawsuit on [Defendant] Blough, so [he] was the only one forced to transfer out [of] the unit in the middle of the night." (*Id.*, PageID.5.)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise the following claims: First Amendment retaliation claims, First and Fourteenth Amendment access to the courts claims, and Fourteenth Amendment equal protection claims. As relief, Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages. (*Id.*, PageID.6.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

3

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation Claims

Plaintiff alleges that Defendants retaliated against him because he had filed a prior civil rights lawsuit against Defendant Blough and did not settle the case in mediation. (*See* Compl., ECF No. 1, PageID.3–5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the

4

plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that he filed a prior civil rights lawsuit against Defendant Blough and that Plaintiff did not settle the case in mediation. (*See* Compl., ECF No. 1, PageID.3.) The filing of a civil rights action constitutes protected activity. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). It is unclear whether the act of not settling a case in mediation would itself constitute protected conduct; however, regardless, the Court considers this activity to be a part of the above-discussed civil rights lawsuit, and the filing of the lawsuit is protected activity.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606. Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff claims that Defendant Lien transferred Plaintiff to another unit, allegedly at the direction of Defendant Blough. (*See* Compl., ECF No. 1, PageID.3 (alleging that Defendant Lien stated: "[Defendant] Blough was just served with your lawsuit and he wants you out of his

5

unit!"). Plaintiff alleges that he lost his "high paying head porter's job" due to the transfer. (*Id.*) Additionally, Plaintiff claims that Defendant Lien threatened Plaintiff when Lien ordered Plaintiff to transfer to the new unit, telling Plaintiff that Lien was "transferring [Plaintiff] to another unit for [Plaintiff's] safety or [Lien]'s placing [Plaintiff] in administrative segregation and writing [Plaintiff] a class [I] misconduct." (*Id.*)

At this stage of the proceedings, the Court must take the factual allegations in the complaint as true and in the light most favorable to Plaintiff. Under these circumstances, although Plaintiff has by no means proven his First Amendment retaliation claims against Defendants Blough and Lien, the Court will not dismiss Plaintiff's retaliation claims against Defendants on initial review. *Cf. Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009) (holding that a threat to have a prisoner moved out of the unit so that he would lose his job, together with a threat to influence the warden to have the prisoner transferred to another institution far from his family could be sufficiently adverse to be actionable); *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"). *But see Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (discussing that, ordinarily, transfers to the general population of another prison are not typically an adverse action).

### B.   Access to the Courts Claims

In this action, Plaintiff alleges that because he was transferred to another unit, he lost his "high paying porter[] job that [Plaintiff] held in Baker Unit for over a year." (Compl., ECF No. 1, PageID.3.) Plaintiff claims that as a result of losing this job, he is "not able to pay filing fees for case no. 1:23-cv-1038 or pay for copies." (*Id.*, PageID.4.) The Court construes these allegations to raise claims regarding the alleged denial of access to the courts.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354

6

(1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and show that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord*

7

*Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Here, Plaintiff alleges that case no. 1:23-cv-1038, a civil rights action that Plaintiff previously filed in this Court, was impacted by the loss of his prison job. (Compl., ECF No. 1, PageID.3–4.) This civil rights action is an action for which Plaintiff may bring an access to the courts claim. However, as explained below, Plaintiff fails to show that he suffered any lost remedy in the underlying action.

First, Plaintiff claims that he is no longer able to pay the filing fees in case no. 1:23-cv-1038; but, Plaintiff is only obligated to pay those fees when the amount in his prison trust account meets the statutorily mandated requirements. *See* Order, *Williams v. Blough*, No. 1:23-cv-1038 (W.D. Mich. Aug. 23, 2024), (ECF No. 15); *see also* 28 U.S.C. § 1915(b)(2). If Plaintiff has no money in his prison account, or does not meet the statutory minimum amount, he is not required to pay the filing fees associated with case no. 1:23-cv-1038 at that time. *See* 28 U.S.C. § 1915(b)(2). Under these circumstances, Plaintiff's inability to pay the filing fees in case no. 1:23-cv-1038 did not, and does not, result in any lost remedy to Plaintiff.

Second, as to Plaintiff's conclusory assertion that he is unable to "pay for copies" in case no. 1:23-cv-1038, Plaintiff alleges no facts to support this claim. Looking at the docket in case

8

no. 1:23-cv-1038, Plaintiff has filed many documents in that case, and there is no indication that the lack of "copies" of a document has prevented Plaintiff from filing the document with the Court. Plaintiff therefore fails to show that he suffered any lost remedy due to his inability to "pay for copies."

Because Plaintiff has failed to show any lost remedy, he has failed to state a claim for denial of access to the courts. Accordingly, for the reasons set forth above, Plaintiff's access to the courts claim will be dismissed.

### C.    Fourteenth Amendment Equal Protection Claims

Additionally, Plaintiff alleges that he is "the only one that ha[s] a lawsuit on [Defendant] Blough, so [he] was the only one forced to transfer out [of] the unit in the middle of the night." (Compl., ECF No. 1, PageID.5.) The Court construes this allegation to raise an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*,

801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff alleges in a conclusory manner that he was treated differently than others; however, Plaintiff fails to show that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court reaches the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no *facts* that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's access to the courts claims and Fourteenth Amendment equal protection claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against Defendants Blough and Lien remain in the case.

An order consistent with this opinion will be entered.

Dated:   June 9, 2025                              /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge